UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BRIAN C. BENSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| VS. | )    No. 20-1057-JDT-cgc |
| | ) |
| HARDIN COUNTY, TENNESSEE, ET AL., | ) |
| | ) |
|    Defendants. | ) |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

      On March 12, 2020, Plaintiff Brian C. Benson, who is incarcerated at the Hardin County Correctional Facility in Savannah, Tennessee, filed a *pro se* complaint under 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On March 13, 2020, the Court granted leave to proceed *in forma pauperis* and assessed the filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) Benson sues Hardin County, Tennessee; the Hardin County Correctional Facility (Jail); Amanda Moore, a Nurse at the Jail; Johnny Alexander, Hardin County Sheriff; and Tracey White, Jail Administrator. (ECF No. 1 at PageID 1, 3.)

      Benson's complaint concerns (1) his requests for medical treatment concerning a pre-existing back injury that occurred prior to his incarceration, (*id*. at PageID 5); (2) the grievances he has written about his back pain issues, which he contends went "unresolved," (*id*.); (3) the lack of access to "people from the Church of Christ" who visit the Jail and the denial of Benson's request for Bible studies from an outside publisher, (*id*. at PageID 6); and (4) lack of access to a

legal advisor, a law library, and news media, (*id.* at PageID 4, 7). Benson seeks compensatory damages and various types of injunctive relief. (*Id.* at PageID 4.)

For the reasons explained below, Benson fails to state a claim on which relief may be granted.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

>Benson filed his complaint pursuant to 42 U.S.C. § 1983, which provides:
>
>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Benson seeks to sue the Defendants in their official capacities, his claims are treated as claims against their employer, the Jail, and in turn as claims against Hardin County.  *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).  Hardin County may be held liable *only* if Benson's injuries were sustained pursuant to an unconstitutional custom or policy.  *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

"[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Benson does not allege that he has been deprived of a right because of a Hardin County policy or custom. He instead seeks relief based on his general allegations about the Jail. Benson does not state a claim against Hardin County or against any Defendant in his or her official capacity.

Benson states that he has not seen medical personnel at the Jail for his "back injury" due to his "shifted . . . spine . . . [from] a[n] accident before I came to [the Jail]." (ECF No. 1 at PageID 5.) He alleges he has "been writing the Nurse Amanda Moore on sick calls . . . to request to be seen by the Nurse for . . . meds to be prescribe[d]. . . . I have not seen the Nurse . . . not one time since I been incarcerated and can't get no response from her[.]" (*Id.*) Benson alleges he also wrote Defendant White and filed grievances about his need for medical care but still received no responses. (*Id.*)

The Court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain" . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. That is, an Eighth

4

Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.

The objective component of a medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component requires that jail officials acted with the requisite intent—i.e.,—had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

Benson insufficiently alleges facts demonstrating any serious medical need. He does not describe his symptoms or their duration, prior diagnoses and treatments, or other features of his alleged condition. Furthermore, he has not demonstrated that any Defendant had a "sufficiently culpable state of mind" and acted with "deliberate indifference" regarding his condition. Instead, Benson simply states that he has not received any responses to his requests for medical care. (ECF

5

No. 1 at PageID 5.) Without more, this contention does not satisfy the subjective prong of Eighth Amendment analysis. Though Benson describes his displeasure with the wait-time for medical attention, that dissatisfaction alone is not actionable. *See Wilson*, 501 U.S. at 298 ("the Constitution does not mandate comfortable prisons"); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (same). Benson does not allege that any Defendant actually knew of, yet disregarded, an excessive risk to his health.

Both the objective and subjective components of deliberate indifference analysis must be present in order to state a claim. Benson's allegations do not satisfy either component. The complaint thus fails to state a claim for constitutionally inadequate medical care.

Benson suggests the grievance process at the Jail is inadequate. (*See* ECF No. 1 at PageID 5, 8.) Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure."). Prisoners have a First Amendment right to file a grievance against prison officials, but they have no similar right to an investigation of their allegations. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003). Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Benson's contentions regarding his grievances fail to state a claim for relief.

Benson states there are eight pods of men at the Jail but only a few of those pods receive visits by "the church people from the Church of Christ." (ECF No. 1 at PageID 6.)  He further alleges that he is not permitted to order books from Mount Zion Bible Institute "for my Bible studies." (*Id*. ("I have written the Mount Sinai Bible Institute publisher to send me Bible studies so that way I can study the Word of God.  I wrote a request to the [Jail] staff asking for my Bible studies from Mount Zion Bible Institute Publisher.  I was told that they do not do them no more . . . and they would be placed into my property or sent back.").

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.  The First Amendment is applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

Although "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates "clearly retain protections afforded by the First Amendment," including the right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted).  To establish that this right has been violated, a plaintiff must establish that:  (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringed upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).  Though prisoners retain a First Amendment right to the free exercise of their religion, "'the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs.'" *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (quoting *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).

Courts therefore must "'balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons.'" *Id.* (quoting *Mintzes*, 771 F.2d at 929). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" and is not "an 'exaggerated response' to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Benson's factual allegations insufficiently plead any First Amendment deprivation. He suggests, at most, that the Jail limits the areas in which the "people from Church of Christ" may physically circulate while there and that he is not allowed to have Bible studies from outside publishers in his cell. (*See* ECF No. 1 at PageID 6.) He does not allege whether his pod is always one of those denied access to people from the Church of Christ and, if so, the reasons given by the Jail for that limitation. Benson also does not state whether he has access to people from other denominations who visit the Jail. He does *not* contend he cannot have a Bible in his cell or that he cannot pray, worship, or read and study his Bible on his own. Benson thus does not adequately allege that Jail personnel prohibit, prevent, discriminate against, or otherwise limit his religious beliefs.

Benson fails to state a claim for the deprivation of his First Amendment right to exercise his religion.

Benson alleges that a law library or "legal advisor[s]" are not "offered to inmates" in the Jail. (ECF No. 1 at PageID 7.)[1] He further adds that, while he has been incarcerated, he has had insufficient access to his court-appointed counsel in his underlying criminal case. (*Id.*)

---

[1] Benson alleges the Jail does not allow inmates access to newspapers or "some sort of news media" but does not elaborate. (*Id.* at PageID 4.) He also does not allege that he suffered

8

Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus X*, 175 F.3d at 394. *See also Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (a plaintiff must "show that the defendants have scuttled his pursuit of a nonfrivolous, arguable claim" (internal quotation marks omitted)). *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (a prisoner must show that "prison officials' conduct . . . hindered his efforts to pursue a nonfrivolous legal claim"). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)).

"The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their

---

any remediable injury from the lack of news media and therefore fails to state a claim.

9

confinement." *Lewis*, 518 U.S. at 355.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

Benson does not meet the requite constitutional showing for an access-to-courts claim.  As to his contentions about not being "offered a law library," (ECF No. 1 at PageID 7), he does not state that lack of a library hindered his efforts to pursue a nonfrivolous legal claim.  Though he asserts he is "being handycapped [sic] with these civil rights claims I'm writing to you," (*id.*), he was able to file the complaint without a law library or a Jail-provided legal advisor.  Benson does not describe or otherwise address any other cause of action in which a remedy was lost or frustrated by not having a law library.

Benson also alleges he is handicapped in his criminal case by the lack of a law library at the Jail.  (*Id.*)  However, his admission that counsel was appointed for him in his underlying criminal case, (*id.*), belies his claim that he was denied meaningful access to the courts.  As federal courts have routinely recognized, appointment of counsel in a criminal case satisfies any obligation which a state has to provide inmates with legal assistance.  *See United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (citing *United States v. Smith*, 907 F.2d 42, 44 (6th Cir. 1990)); *see also Smith v. Cnty. of Santa Clara,* 223 F. App'x 701 (9th Cir. 2007) (pretrial detainee's access to court-appointed counsel satisfied right to meaningful access to the courts, even if law library available to him in the county jail was inadequate).

As to Benson's assertions about being able to speak only briefly with his court-appointed counsel prior to court hearings, hearing "nothing back" when he writes to his lawyer, and being unable to directly call his attorney because the "number is restricted," (ECF No. 1 at PageID 7), Benson does not contend that the named Defendants caused these problems or have any control

10

over his attorney's actions. Even if Benson had named his attorney as a defendant in this case, he would have no claim under 42 U.S.C. § 1983. Attorneys, even if court-appointed, do not act under color of state law for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (private attorney who is appointed by the court does not act under color of state law); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amendable to suit under § 1983.").

For all of the foregoing reasons, Benson's complaint is subject to dismissal in its entirety for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Benson should be given the opportunity to amend his complaint.

In conclusion, the Court DISMISSES Benson's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). Leave to amend, however, is GRANTED.

11

**Any amended complaint must be filed within twenty-one days after the date of this order, on or before October 29, 2020.** Benson is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Benson fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                                     s/ **James D. Todd**
                                                     JAMES D. TODD
                                                     UNITED STATES DISTRICT JUDGE